NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY MAY,<br><br>     Petitioner,<br><br>   v.<br><br>STEVEN JOHNSON and<br>THE ATTORNEY GENERAL OF THE<br>STATE OF NEW JERSEY,<br><br>     Respondents. | Civil Action No. 16-0190(MCA)<br><br>**OPINION** |

**MADELINE COX ARLEO, District Judge**

## I.  INTRODUCTION

Anthony May ("Petitioner") has opened this matter to the Court with his pro se Petition for writ of habeas corpus (ECF No. 1) seeking to vacate his guilty plea and seeking an order for a psychological examination to determine mental competence; or alternatively, seeking an evidentiary hearing. (ECF No. 1 at 15.) On July 1, 2016, Respondents filed an Answer to the Petition. (ECF No. 9.) Petitioner states that is not filing a reply. (ECF No. 14.)

For the reasons explained below, the Court will: deny the Petition with prejudice as not only time-barred but also because it lacks merit; deny an evidentiary hearing; deny a psychological examination; and deny a certificate of

appealability.

## II. **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

### A. **Factual Background**

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] relies upon the recitation of facts set forth by the Law Division of the Superior Court of New Jersey ("Law Division") in its October 7, 2013 opinion denying Petitioner's application for post-conviction relief ("PCR"). (ECF No. 11-2.)

On November 9, 1998, Ms. Olga Schwab was home alone at her residence in Orange, New Jersey. The Petitioner rang her doorbell and asked her if the landlord was home. Ms. Schwab told the Petitioner that she would take down his name and number. As she turned to walk back in the house, Petitioner followed behind her, grabbed her head from behind, and slit her throat. He then laid Ms. Schwab down and stabbed her additional times in the side and chest. At the time of her death, Ms. Schwab was eighty-six years old. Petitioner proceeded to steal several items of

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

jewelry from Ms. Schwab's house that he sold that same night to a drug dealer in exchange for drugs. (ECF No. 11-2 at 2.)

On January 21, 1999, Mr. Robert Wang was home alone at his residence in Orange, New Jersey. Petitioner broke into the residence with a screwdriver and was in the process of a theft when Mr. Wang entered the kitchen in his wheelchair. Petitioner slit Mr. Wang's throat and proceeded to take several items of monetary value from Mr. Wang's residence. At the time of his death, Mr. Wang was seventy-seven years old. Later that night, Petitioner sold the stolen items and used the money to purchase drugs. (*Id.* at 2-3.)

On January 27, 1999, police arrested Petitioner. He confessed in separate statements to both murders. In his confession for Mr. Wang's murder, Petitioner stated that he could read, write, and fully understand English. Additionally, he stated that he had completed high school and that he was enrolled in computer typing classes. After Petitioner's first confession, he indicated that he wished to clear up something else. Petitioner then confessed to killing Ms. Schwab. Petitioner stated that he was not on drugs at the time of either murder. (*Id.* at 3.)

## B. **Procedural History**

On July 29, 1999, an Essex County grand jury returned a twelve-count indictment against Petitioner, as follows: first-degree murder of Olga Schwab and Robert Wang (Counts One and Seven); first-degree felony murder of Olga Schwab and Robert Wang (Counts Two and Eight); second-degree burglary of the victims' premises (Counts Three and Nine); first-degree armed robbery of the victims (Counts Four and Ten); fourth-degree unlawful weapon possession (Counts Five and Eleven); and third-degree weapon possession for an unlawful purpose (Counts Six and Twelve). (ECF No. 11-2 at 3; ECF No. 9-4.)

Appearing before the Honorable Richard C. Camp, J.S.C. on November 2, 2000, Petitioner entered guilty pleas pursuant to a plea agreement on these charges in Indictment 99-07-02630-I: first-degree felony murder (Count Two), second-degree burglary (Count Three), fourth-degree unlawful weapon possession (Count Five), first-degree felony murder (Count Eight), second-degree burglary (Count Nine), and fourth-degree unlawful weapon possession (Count Eleven). (ECF No. 11-2 at 3; ECF No. 9-1 at 3-4.) In exchange, the State dismissed Indictment 99-07-02630-I's other six counts, as well as the entirety of three other indictments (99-07-9627; 99-078-2628; and 99-04-1288). (ECF No. 11-2 at 3.)

4

The State agreed to recommend a thirty-year term of imprisonment for each of the counts charging felony murder, to run consecutive to each other with sixty years of total parole ineligibility. (ECF No. 11-2 at 3; ECF No. 9-1 at 3-4.)

On December 8, 2000, the Department of Probation interviewed Petitioner for purposes of creating a Pre-Sentence Report. (ECF No. 11-2 at 4.) Petitioner stated that he was classified as being "slow" in grammar school and that he was enrolled in special education training in high school. Contrary to the history he gave in previous confessions, Petitioner stated that he had never completed high school, as he dropped out after the eleventh grade. In addition, he told the probation officer that he was "high" when he committed these crimes. (*Id.*)

On December 15, 2000, the sentencing judge sentenced Petitioner in accordance with the plea agreement, as follows: a thirty-year term with thirty years of parole ineligibility on Count Two as to felony murder of Ms. Schwab; and a thirty-year term with thirty years of parole ineligibility on Count Eight as to felony murder of Mr. Wang. The sentences were consecutive, for a total prison term of sixty years with no parole eligibility. (ECF 9-2 at 12.) Judge Camp merged Counts Three and Five into Count Two, and also Counts Nine and Eleven into Count Eight. (ECF No. 11-2 at 4; ECF No. 9-2 at 12.) The remaining

counts and indictments were dismissed. (ECF No. 11-2 at 4; ECF No. 9-2 at 9-10; ECF No. 9-5.)

Petitioner directly appealed his sentence, arguing that his sentence was excessive as the trial court did not take into consideration his full-scale IQ of 60 and performance IQ of 71. (ECF No. 11-2 at 4.) On April 10, 2001, the Appellate Division of the Superior Court of New Jersey ("Appellate Division") affirmed Petitioner's sentence. (ECF Nos. 9-6 and 9-7.) On September 6, 2001, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. May*, 784 A.2d 718 (N.J. 2001). (ECF No. 9-8; ECF No. 11-2 at 4.)

Over ten years later, on February 3, 2012, Petitioner filed a pro se PCR petition, asserting ineffective assistance of counsel ("IAC"). (ECF No. 9-9.) His assigned counsel filed a supporting brief on July 15, 2013. (ECF No. 9-10.) After hearing argument on September 16, 2013 (ECF No. 11-2 at 4), the Honorable Patricia K. Costello, A.J.S.C. denied PCR on October 7, 2013. (ECF NO. 11-2; ECF No. 11-3.)

Judge Costello ruled that the PCR petition was procedurally barred because it was filed beyond the five-year period allowed by New Jersey Rule of Court 3:22-12(a)[2], and Petitioner "provided

---

[2] "Except as provided in paragraphs (a)(2), (a)(3), and (a)(4) of this rule, no petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged…" New Jersey

no factual assertions to back up his claim that a failure to hear his petition would result in a fundamental injustice." (ECF No. 11-2 at 4, 5.) The judge stated further that Petitioner "provided no explanation for the delay." (*Id.*)

After applying the two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984), and subsequently adopted by the New Jersey Supreme Court in *State v. Fritz,* 105 N.J. 42, 58 (1987), Judge Costello also reviewed and denied Petitioner's PCR application on the merits. (ECF No. 11-2 at 11.)

Petitioner filed a Notice of Appeal of the PCR denial, dated April 21, 2014. (ECF No. 11-4; ECF No. 11-5 at 3.) On May 6, 2015, the Appellate Division affirmed Judge Costello's denial of PCR. *State v. May*, No. A-3735-13T3, 2015 WL 2070061, at *1 (N.J. Super. Ct. App. Div. May 6, 2015). On October 9, 2015, the New Jersey Supreme Court denied certification. *State v. May*, 122 A.3d 991 (N.J. 2015).

Petitioner executed his § 2254 Petition on December 1, 2015. (ECF No. 1 at 15-16.) However, he left blank the form's section directing him to indicate the date on which he placed the Petition into the prison mailing system. (*Id.* at 15.) The Clerk's Office received and docketed his original habeas petition on January 12, 2016. (ECF No. 1.) Petitioner

---

Rule of Court 3:22-12(a)(1).

acknowledges the untimeliness of the Petition (*id.* at 13) but argues that he "lacked the reasonable level of intelligence to timely file his PCR petition and this [habeas] Petition for habeas corpus" because of his "extremely low IQ and condition of 'mental retardation.'" (*Id.*)

Respondents' Answer argues, *inter alia*, that Petitioner's application for habeas relief is untimely. (ECF No. 8 at 22-30.)

III.  **ANALYSIS**

A. **The Petition Is Untimely**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress prescribed a one-year period of limitation for the filing of federal habeas corpus petitions by state prisoners. *See Douglas v. Horn*, 359 F.3d 257, 261 (2004); 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of —

> (A) [T]he date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review;
> (B) [T]he date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) [T]he date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) [T]he date on which the factual
> predicate of the claim or claims presented
> could have been discovered through the
> exercise of due diligence.

28 U.S.C. § 2244(d)(1). Thus, except in extremely limited circumstances, a prisoner must file one all-inclusive petition within one year of the date when judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d).

State courts' criminal judgments become "final" for AEDPA purposes by the conclusion of direct review or by the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999). United States Supreme Court Rule 13.1 affords litigants ninety days to file a petition for writ of certiorari in the United States Supreme Court. Accordingly, if a state prisoner, such as Petitioner here, seeks discretionary review to the state's highest court but does not file a petition for writ of certiorari with the United States Supreme Court, the state court judgment becomes final ninety days after the state's highest court denies review or relief. Since Petitioner did not pursue direct review all the way to the United States Supreme Court, his judgment of conviction became final ninety days after entry

of the New Jersey Supreme Court's September 6, 2001 order denying certification -- *i.e.*, December 5, 2001. *See* 28 U.S.C. § 2244(d)(1)(A). The AEDPA's one-year limitations period began to run on December 6, 2001, and it expired one year later -- on December 6, 2002.

Petitioner has not provided this Court with any evidence that he placed his § 2254 Petition into the prison mailing system on or before December 6, 2002. Instead, the record demonstrates only that he executed his Petition on December 1, 2015 (ECF No. 1 at 15-16), making it *per se* untimely unless saved by statutory or equitable tolling. *See* 28 U.S.C. § 2244(d)(1)(A).

### 1. **The Record Does Not Support Statutory Tolling**

Under the AEDPA's statutory tolling provision of § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Under this statutory tolling exception, the AEDPA's one-year limitation period is tolled during the time a properly filed application for state PCR relief is pending. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003); *Fahy v. Horn*, 240

F.3d 239, 243 (3d Cir.), *cert. denied*, *Horn v. Fahy*, 534 U.S. 944 (2001).[3]

Statutory tolling does not remedy the Petition's untimeliness in this case. Petitioner's February 3, 2012 PCR petition (ECF No. 9-9) would have been Petitioner's first action that might have statutorily tolled the running of the AEDPA's one-year limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (habeas limitations period is statutorily tolled while a properly filed state collateral relief petition is pending); *Figueroa v. Buechele*, No. 15-1200, 2015 WL 1403829, at *2 (D.N.J. Mar. 25, 2015) (citing *Swartz*, 204 F.3d at 419 and *Morris*, 187 F.3d at 337 n.1).

The AEDPA's one-year period had already expired on December 6, 2002 -- i.e., over nine years before Petitioner filed his PCR petition on February 3, 2012. Thus, there was no limitations period to "toll" by the time he filed for PCR. That is, the AEDPA's one-year period had already expired by the time he filed his PCR petition. Thus, his PCR petition cannot serve to statutorily toll the running of the AEDPA's limitations period. *See Boston v. Warden, Sussex Corr. Inst.*, No. 17-1789, 2017 WL

---

[3] An application for post-conviction relief is considered "pending" within the meaning of § 2244(d)(2) during the period between a lower state court's ruling and the period a petitioner has to seek review of the decision, whether or not the appeal was actually sought. *Swartz*, 204 F.3d at 424.

8220427, at *1 (3d Cir. June 8, 2017) ("statutory tolling does not help [petitioner] because he did not seek state post-conviction relief until after AEDPA's limitations period had expired"). "[Statutory] tolling applies [] only when the application for state post-conviction review was filed before the expiration of the [AEDPA's] limitations period ... [N]o statutory tolling results if a PCR application is filed more than a year after the litigant's judgment became final." *Jones v. Warren*, No. 12-4046, 2013 WL 5674167, at *1 (D.N.J. Oct. 15, 2013) (citing *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004) and *Schlueter v. Varner*, 384 F.3d 69, 78-79 (3d Cir. 2004)).[4]

For these reasons, the Petition is *per se* untimely, and Petitioner is not entitled to statutory tolling.

In light of Petitioner's pro se status, this Court will also consider equitable tolling.

## 2. **The Record Does Not Support Equitable Tolling**

When, as here, statutory tolling is unavailable, the AEDPA's statute of limitations may be equitably tolled in certain extraordinary circumstances. *United States v. Thomas*,

---

[4] *Accord Terry v. Cathel*, No. 12-5263, 2012 WL 4504590, at *5 (D.N.J. Sept. 27, 2012); *Bull v. Power*, No. 08-1380, 2009 WL 2928904, at *8 (D.N.J. Sept. 9, 2009); *Helmlinger v. Adult Diagnostic & Treatment Ctr.*, No. 07-3187, 2008 WL 4058511, at *4 n.8 (D.N.J. 2008); and *Denmon v. Ricci*, No. 07-4900, 2009 WL 2898829, at *3 (D.N.J. Sept. 9, 2009).

713 F.3d 165, 174 (3d Cir. 2013). Courts may grant equitable tolling sparingly and only when equitable principles make rigid application of a limitation period unfair. *See Thomas*, 713 F.3d at 174 (citing *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)). "There are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon*, 654 F.3d at 399. The courts should only permit it "in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005). Mere excusable neglect is insufficient. *Id.*

To claim equitable tolling, a habeas petitioner must show: (1) that he faced "extraordinary circumstances" that stood in the way of timely filing, and (2) that he exercised "reasonable diligence" in pursuing his rights throughout the period to be tolled. *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2562-63 (2010); *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (quoting *Pabon*, 654 F.3d at 399).

Here, Petitioner has not demonstrated that this case is one of those "rare situation[s]." *LaCava*, 398 F.3d at 275.

### a. Extraordinary Circumstances

To establish "extraordinary circumstances," a petitioner must show either that he has been actively misled, that he was prevented from asserting his rights in some extraordinary way, that he timely asserted his rights in the wrong forum, or that

13

the court misled him regarding the steps he needed to take to preserve his claim. *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999); *see also Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir.), *cert. denied*, 546 U.S. 957 (2005). The requisite degree of extraordinariness turns on "'how severe an obstacle it is for the prisoner endeavoring to comply with the AEDPA's limitations period.'" *Pabon*, 654 F.3d at 400 (citing *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

"Extraordinary circumstances" do not exist here.

The Court construes Petitioner's equitable tolling argument as an allegation that he was prevented from asserting his rights in some extraordinary way, *see Jones*, 195 F.3d at 159, by virtue of his "extremely low[5] IQ" and "mental retardation" during an unspecified time period, which prevented him from timely filing the § 2254 Petition. (ECF No. 1 at 13-14; ECF No. 1-2 at 1 and 4-5, 7-8, and 9-10.) He provides no objectively verifiable evidence that either claimed impediment occurred during the relevant time frame or that they in fact impacted his Petition's timely filing.

Exhibit 1 to the § 2254 Petition contains a December 13, 2000 report to Judge Camp by a clinical social worker, intended

---

[5] *See also* ECF No. 9-2 at 10 (sentencing hearing) (Judge Camp: "... You're probably learning disabled. But you're a daily user of cocaine until this arrest ... I have to feel that regardless of your psychological limitations, you do have a brain").)

to "augment the pre-sentencing report of the probation department." (ECF No. 1-1 at 2 ("the CVA Report").) The CVA Report includes, *inter alia*, educational performance and learning capability assessments during middle school and high school. (*Id.* at 3, 6, and 7-8.) The most recent mental health or intelligence assessment of Petitioner documented in the CVA Report was a neuro-psychiatrist's evaluation done in 1980. (*Id.* at 7.)

During PCR proceedings, Judge Costello noted that "[n]o evidence has been proffered regarding the defendant's diminished mental capacity at the time of the *Mirandized* statements." (ECF No. 11-2 at 7.) The record compels this Court to make a similar conclusion again on habeas review. Petitioner has not substantiated his IQ-related assertions as it relates to the pertinent time period -- *i.e.*, on or around when the AEDPA's limitations period began (December 6, 2001) and when it expired (December 6, 2002). While the CVA Report documents IQ-related assessments of Petitioner only through 1980 (ECF No. 1-1 at 6-7), the relevant time frame here is the period during which Petitioner could have timely filed for PCR and habeas relief.[6]

---

[6] In addition, Petitioner was represented by counsel during much of state court proceedings prior to his § 2254 Petition. (*See, e.g.*, ECF Nos. 9-1 (guilty plea hearing), 9-2 (sentencing hearing), 9-3 (PCR hearing), 9-6 (excessive sentencing hearing), 9-10 (PCR brief of Petitioner's counsel), and 9-15 (PCR appellate brief of Petitioner's counsel).

15

Thus, Petitioner's unsubstantiated assertions do not demonstrate the requite extraordinariness[7] to justify waiting over seven years past New Jersey Rule of Court 3:1-1's deadline to file his PCR petition -- which could have statutorily tolled his AEDPA statute of limitations.

For these reasons, Petitioner – a defendant with an *unsubstantiated* low IQ *well in advance* of the *relevant* time frame -- has not shown "extraordinary circumstances." Petitioner's submissions to the state tribunals and to this habeas Court offer no evidence that he was ever adjudicated incompetent, was ever diagnosed as irreversibly retarded, or was ever institutionalized for his alleged mental impairments so as to impact timely filings during the pertinent 2001-2002 time period. The CVA Report neither diagnoses him with mental retardation nor states that his functional retardation level is chronic and irreversible. (ECF No. 1-1 at 6 (in 1980, Petitioner "was functioning in the educable mentally retarded range").

---

[7] Moreover, the record irrefutably demonstrates evidence of Petitioner's guilt for the crimes charged. *See, e.g.*, ECF No. 9-2 at 9, 13 ("On November 2nd you plead guilty to count two, first degree murder -- felony murder; count three, second degree burglary; count five, fourth degree unlawful possession of a weapon; count eight, first degree felony murder; count nine, second degree burglary; count 11, fourth degree unlawful possession of a weapon ... [T]he facts and the evidence [were] overwhelming [as to] guilt"). Petitioner neither alleges actual innocence, nor does the record reflect any evidence suggesting that such is the case.

Thus, the CVA Report does not raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition during 2001-2002.

In similar contexts, federal courts have rejected any finding of "extraordinary circumstances." *See*, *e.g.*, *Champney v. Sec'y of Pennsylvania Dep't of Corr.*, 469 F. App'x 113, 118-19 (3d Cir. 2012) (prisoner's alleged mental incompetency was not "extraordinary circumstance," despite mental health reports indicating diminished cognitive ability, neurodevelopmental brain dysfunction, and anxiety disorder, in view of prisoner's history of timely filing documents in court, and *absence of evidence* that prisoner had ever been *adjudicated* incompetent or that he had been treated for mental illness) (emphasis added).

*See also Columbert v. Brewer*, No. 18-1339, 2018 WL 4621951, at *3 (6th Cir. July 5, 2018) (petitioner's "documents indicate that she has low intelligence [and] was enrolled in special education classes during her schooling ... But none of these records reflects [her] ... mental competence at the time the limitations period was running"); *Alvarado v. Smith*, 713 F. App'x 739, 743 (10th Cir. 2017) (petitioner "needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application -- that is May

22, 2009 to May 24, 2010. First, he has not been judged incompetent. Second, he was not institutionalized during the relevant time"); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (a 1997 competency report "showed [petitioner] was *diagnosed* with *chronic, irreversible* mental retardation" that "remain[ed] probative of [petitioner's] mental impairment as to the § 2254 petition during the limitations period") (emphasis added); *Blackhurst v. Pugh*, 65 F. App'x 103, 104 (9th Cir. 2003) (petitioner "submitted no evidence indicating his mental state during the relevant time period"); *Simon v. Stephen*, No. 3:14-cv-2930, 2015 WL 10372432, at *1 (N.D. Tex. Dec. 15, 2015) ("The lack of a causal connection between the 1998 intellectual deficiency determination and the timely pursuit of federal habeas relief more than a decade later ..., together with the fact that Simon pursued state and federal habeas relief *pro se,* regardless of his alleged mental impairments" prevented a showing of exceptional circumstances) (internal citations omitted).[8]

In short, the constitutional standard far exceeds Petitioner's showing here. *Cf. Ross v. Varano*, 712 F.3d 784 (3d Cir. 2013). Petitioner states only that, were this Court not to

---

[8] *Accord Kitchen v. Bauman*, 629 F. App'x 743, 749 (6th Cir. 2015); *Steel v. Ryan*, 468 F. App'x 659, 661 (9th Cir. 2011); *Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005); *Green v. Hinsley,* 116 F. App'x 749, 751 (7th Cir. 2004).

consider the merits of his § 2254 Petition because of its
untimeliness, such circumstance "would be contrary to the
federal and NJ State Constitutions." (ECF No. 1 at 14.) This
blanket assertion does not in any way begin to meet his burden.

### b.  **Reasonable Diligence**

The United States Supreme Court has instructed that "[t]he
diligence required for equitable tolling purposes is 'reasonable
diligence,' ... not 'maximum feasible diligence.'" *Holland*, 560
U.S. at 653. The Third Circuit has similarly held that "[d]ue
diligence does not require 'the maximum feasible diligence,' but
it does require reasonable diligence in the circumstances."
*Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir.2004) (internal
citations omitted).

Allegations of mental impairments, such as Petitioner's
supposed "extremely low IQ" and "mental retardation" (ECF No. 1
at 13-14), without more, are insufficient to justify equitable
tolling. See, *e.g.*, *Columbert*, 2018 WL 4621951, at *3; *Alvarado*,
713 F. App'x at 743; *Blackhurst*, 65 F. App'x at 104. Rather, the
Court agrees with Respondents that he "has been morbidly
dilatory in exercising his right to pursue habeas relief." (ECF
No. 9 at 26.) Petitioner was not simply a few weeks or months
late with respect to his PCR and habeas filings. He executed his
§ 2254 Petition on December 1, 2015 -- over twelve years past
the AEDPA's December 6, 2002 deadline. The Third Circuit has

rejected findings of "reasonable diligence" in far less egregious situations than Petitioner's case. *See*, *e.g.*, *Merritt*, 326 F.3d at 170 (defendant who exhausted all state remedies and waited two years past the AEDPA's deadline was not diligent). Furthermore, Petitioner's participation in court proceedings such as his 2001 direct appeal, 2012 pro se PCR filing, and 2014 PCR appeal compels the conclusion that a finding of "reasonable diligence" is not warranted here as to his belated § 2254 Petition

For all of these reasons, Petitioner is not entitled to equitable tolling.

## B. The Petition Fails On The Merits

In addition to the Petition's untimeliness and the unavailability of statutory or equitable tolling, the Petition fails on the merits, as well.

### 1. Standard Of Review

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S.

634, 641 (2003). District courts must give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)).

Federal law is "clearly established" for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A decision is "contrary to" federal precedent for these purposes if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause of §
2254(d)(1), a federal habeas court may grant the writ if the
state court identifies the correct governing legal principle
from th[e Supreme] Court's decisions but unreasonably applies
that principle to the facts of the prisoner's case." *Williams*,
529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a
federal court must confine its examination to evidence in the
record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

The petitioner carries the burden of proof, and review
under § 2254(d) is limited to the record that was before the
state court that adjudicated the claim on the merits. *See*
*Harrington*, 562 U.S. at 100. "When reviewing state criminal
convictions on collateral review, federal judges are required to
afford state courts due respect by overturning their decisions
only when there could be no reasonable dispute that they were
wrong." *Id.* at 102-03. Where a petitioner challenges an
allegedly erroneous factual determination of the state courts,
"a determination of a factual issue made by a State court shall
be presumed to be correct [and the] applicant shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision
that is appropriate for federal habeas corpus review is the last
reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256,

289-90 (3d Cir. 2008). Furthermore, "when the relevant state-court decision on the merits ... does not come accompanied with ... reasons ... [w]e hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (internal citations omitted). To the extent a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

**2.   Grounds One And Three: Claims Of PCR Court Errors**

Ground One alleges that the PCR court "erred in denying defendant's petition for PCR without affording him an evidentiary hearing to fully address his contention that he

failed to receive effective legal representation at the trial level." (ECF No. 1-2 at 3 ("PCR Evidentiary Hearing Claim").)[9]

Ground Three argues that "[t]he PCR court erred in denying the defendant's petition for PCR, in part, on procedural grounds pursuant to [New Jersey] R. 3:22-12(a)." (*Id.* at 9 ("PCR Procedural Ruling Claim").)

Judge Costello ruled that the PCR petition "was filed untimely." (*Id.* at 18.) She also determined that "[e]ven if the five year time limit were relaxed, this petition for PCR would be denied" because "defendant has not been able to meet his burden for relief" on his IAC claim. (*Id.* at 20, 25.)

During appeal of PCR denial, the Appellate Division rejected the PCR Evidentiary Hearing Claim and the PCR Procedural Ruling Claim, "affirm[ing] substantially for the reasons expressed by Judge Costello." 2015 WL 2070061, at *1.

---

[9] To the extent that Ground One purports to assert a claim of IAC by trial counsel, separate and distinct from Ground One's claim of PCR court error, Petitioner has not sustained his burden under *Strickland v. Washington*, 466 U.S. 668 (1984) for any such IAC claim. (*See* ECF No. 1-2 at 3 (Ground One: "[Petitioner] failed to receive adequate legal representation by [trial counsel] not conducting a thorough investigation [and] ... arrang[ing] for [Petitioner] to be evaluated by a psychiatric or psychological expert").) For the same reasons discussed *infra* as to Ground Two's IAC claim, Petitioner cannot show as to any IAC claim in Ground One that "there is a reasonable probability that the result of the [case] would have been different absent the [supposedly] deficient act or omission" by trial counsel. *See Hinton v. Alabama,* 134 S. Ct. 1081, 1083 (2014) (per curiam).

This Court determines that Grounds One and Three of the Petition lack merit.

Infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. Habeas petitioners are not entitled to relief based upon any alleged deficiencies in state PCR proceedings because purported errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation .... Federal habeas power is limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment"; what occurs in state collateral review proceedings "does not enter into the habeas calculation").

Thus, the PCR Evidentiary Hearing Claim and the PCR Procedural Ruling Claim do not raise claims that are cognizable in a federal habeas proceeding. Even if errors in Petitioner's state PCR proceedings are presumed to have been present, they are irrelevant to the instant habeas matter because they were

collateral to Petitioner's conviction and sentence and thus cannot give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954. *See also* 28 U.S.C. § 2254(i).

Accordingly, Grounds One and Three fail to assert a violation of Petitioner's federal rights.

### 3.   Ground Two: Claim of Ineffective Assistance of Counsel

Ground Two argues that Petitioner's PCR counsel rendered IAC by "fail[ing] to investigate an effective defense as he proceeded with the PCR petition without even attempting to obtain a psychological or psychiatric expert to evaluate [Petitioner]." (ECF No. 1-2 at 6 ("IAC Claim").)

Petitioner's PCR petition alleged IAC as to trial counsel. (ECF No. 9-9 at 7; ECF No. 9-10 at 25-39, 34, 38) (counsel was ineffective for "failing to retain an expert ... regarding a diminished capacity defense and/or on the issue of competency to stand trial ...").) Judge Costello rejected this argument. She noted that "when a petition claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant." (ECF No. 1-2 at 21 (internal citation omitted).) Judge Costello next correctly set forth the governing standard of *Strickland v. Washington*, 466 U.S. 668 (1984) for IAC claims. (*Id.* at 20-21.) She then explained that the court

rejected the IAC Claim because: (1) Petitioner did not sustain his burden of offering any facts showing what a mental capacity investigation of him would have yielded if counsel had pursued it (ECF No. 1-2 at 21, 23); and (2) Petitioner "fail[ed] both prongs of *Strickland/Fritz*." (*Id.* at 22, 24.)

During appeal of PCR denial, Petitioner argued IAC as to PCR counsel. 2015 WL 2070061, at *1. However, his core criticism remained the same as that in his PCR petition – *i.e.*, allegations about counsel's failure to retain a mental health expert: "PCR counsel also failed to investigate an effective defense as he proceeded with the PCR petition without even attempting to obtain a psychological or psychiatric expert to evaluate [Petitioner]." (ECF No. 11-5 at 3 and 23-26.) The Appellate Division rejected his argument, "affirm[ing] substantially for the reasons expressed by Judge Costello." *Id.*

The record demonstrates that Judge Costello's ruling as to trial counsel and the Appellate Division's ruling as to PCR counsel did not unreasonably apply federal law. Petitioner did not establish either prong of *Strickland* as to trial and PCR counsel.

First, as to *Strickland*'s deficient performance element, evidence contradicted Petitioner's contentions that his trial counsel failed to act:

> Specifically[,] counsel submitted an omnibus
> motion on behalf of defendant. Within that
> motion, counsel sought a pre-trial hearing

> to determine the admissibility of any
> statement made by the defendant. The omnibus
> motion was only withdrawn in exchange for
> the defendant's plea agreement [that]
> dismissed 3 additional indictments and
> allowed defendant to avoid the death
> penalty. Thus, there were strategic reasons
> for the decision by counsel to withdraw
> defendant's suppression argument.

(ECF No. 1-2 at 21-22.) As to PCR counsel, Petitioner expressly

concedes that he consented to "proceed on the existing PCR

petition" after "the court offered to allow [him] to withdraw

the PCR petition and refile it when any and all investigations

and evaluations were complete." (*Id.* at 8.) In short, Petitioner

now criticizes PCR counsel for the very conduct to which

Petitioner himself agreed after consulting with counsel.

However, Petitioner cannot raise an IAC claim simply because he

is unhappy that his case did not conclude as he wished. *See*

*Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (IAC claim

analysis is not to "focus[] solely on mere outcome

determination"); *Kim v. United States*, No. 05-3407, 2006 WL

981173, at *3 (D.N.J. Apr. 4, 2006) ("[T]hat [he] now appears

unhappy with the result does nothing to change the fact that

there is not the slightest indication that petitioner received

ineffective assistance of counsel").[10] Judge Costello's ruling on

---

[10] The Court notes also that, at sentencing, counsel *did* argue
that Petitioner's mental defects should mitigate the sentence.
(ECF No. 1-2 at 23-24.) Counsel relied upon the *very same* mental
defects of Petitioner described in the CVA Report (*see* ECF No.

28

*Strickland* defective performance was not objectively
unreasonable as to trial counsel, and the Appellate Division
reasonably could have found that PCR counsel's performance was
not defective.

As to *Strickland*'s prejudice element regarding trial
counsel and PCR counsel, Petitioner has not shown "there is a
reasonable probability that the result of the [case] would have
been different absent the deficient act or omission." *Hinton v.
Alabama,* 134 S. Ct. 1081, 1083 (2014) (per curiam). Petitioner
confessed to the two murders. (ECF No. 11-2 at 3.) He entered a
guilty plea to the crimes. (ECF No. 9-1 at 4-5; ECF No. 9-2 at
9.) The state court determined that Petitioner "did not suffer
from any cognitive deficiency when he confessed[,] as the
statements were made with specificity and clarity ... Moreover,
[Petitioner] expressed remorse for his actions. As [he] was
familiar with the processes of the criminal justice system given
his extensive criminal record, [his] words suggest that he

1-1) -- which Petitioner himself now offers on habeas review as
the sole evidence of his purported cognitive deficiencies. (ECF
No. 1-2 at 24, 25 ("Counsel and the sentencing court were well
aware of the defendant's limitations").) Petitioner offers no
further evidence of cognitive deficit beyond what his counsel
submitted to the state courts - *i.e.,* the CVA Report. His
election now not to offer evidence on habeas -- beyond the CVA
Report -- is disingenuous. He criticizes counsel's decision to
proceed on the PCR petition without a mental health evaluation,
and yet that was a decision in which Petitioner himself joined.
Habeas review was not designed to indulge such self-serving
cherry-picking.

understood the nature of the questioning and the consequences of making a detailed confession." (ECF No. 1-2 at 22.) The state court also found that he "was competent to stand trial and plead guilty as he was able to assist and understand his trial counsel." (ECF No. 1-2 at 23.) Petitioner has not shown that any further investigation by either trial or PCR counsel of unspecified "cognitive limitations" (ECF No. 1-2 at 7) would have undermined or changed the verdict or the PCR ruling.

Accordingly, Judge Costello's ruling as to IAC by trial counsel, and the Appellate Division's rejection of Petitioner's IAC claim against PCR counsel, were neither contrary to, nor involved an unreasonable application of, clearly established federal law under *Strickland*. Nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For all of these reasons, Ground Two is without merit.

## C. **Petitioner Is Not Entitled To An Evidentiary Hearing Or A Psychological Evaluation.**

The Court will deny Petitioner's demand for an evidentiary hearing. Petitioner having failed to make the threshold proffer necessary for statutory or equitable tolling, and the Petition failing on the merits as well, his hearing request does not merit further written discussion and is denied at this time. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 n.2 (3d Cir. 1991)

(petitioner not entitled to evidentiary hearing based on "bald assertions and conclusory allegations").

The Court will also deny Petitioner's demand for a psychological evaluation. Federal district courts have a duty of inquiry to determine whether there is verifiable evidence of the incompetence of a pro se litigant. *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012). Here, the Petition asks for a psychological evaluation "to determine his mental competence." (ECF No. 1 at 15.) The Petition does not, however, contain any reason to believe that Petitioner was incompetent during the time periods pertinent to the issues discussed in this Opinion.

## IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim[s], a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Didiano v. Balicki*, Civil Action No. 09-2315 (FLW), 2010 WL 1752191, at *6-7 (Apr. 29, 2010) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## V. CONCLUSION

For all of these reasons, the Petition is untimely. The current record does not support statutory or equitable tolling. Furthermore, the Petition, in any event, fails on the merits. Therefore, the Petition will be denied with prejudice. Petitioner's requests for evidentiary hearing and psychological evaluation will be denied as well. An appropriate Order follows.

Dated: May 10, 2019

Madeline Cox Arleo
United States District Judge